Lessee of CHRISTIAN FEBIGER, sole trustee of the loan office of Pennsylvania *against* THOMAS CRAIGHEAD.

[ S. C. 4 Dall. 151.]

Quære, whether in the case of a mortagage to an individual for the security of the payment of a sum of money, the lien of the mortgage continues, notwithstanding a sale by a sheriff under a subsequent judgment, until he has received the full demand.
Resolved to be clearly so, in case of a mortgage to the trustees of the general office, though the oath or affirmation of the commissioners of the proper county was not filed with the clerk of the sessions.

EJECTMENT for lands in Cumberland county, tried before Shippen and Bradford, Justice at Carlisle, May assizes, 1793. A verdict was then had for the plaintiffs, subject to the following case stated.

John Glen being seized of the premises in question, mortgaged the same to the trustees of the general loan office, prout mortgage. Afterwards in October term 1781, a judgment was had by John Scott against the said Glen, in the Court of Common Pleas of Cumberland county. In November 1782, these lands having been previously levied on, under a *fieri facias* issued on the above judgment, were duly advertised and sold by the then sheriff to James Davis, and a conveyance executed to him on the 25th March 1873. The same lands were afterwards levied on as the property of Davis, under a subsequent judgment, advertised and sold by the then sheriff to the now defendant, and a conveyance was executed to him on the 24th November 1784. No payments had then or since been made on the mortgage, nor any proceedings had thereon ; and no certificate on oath or affirmation being made by commissioners of the county, as directed by the 9th section of the act of assembly of 26th February 1773, was filed with the the clerk of the Court of Quarter Sessions of Cumberland county.

The point reserved for the opinion of the court on the foregoing facts was, whether when land is sold under a judgment by the sheriff, and no notice given to the purchaser of a prior mortgage to the loan office, the purchaser shall hold the land discharged from the mortgage ?

If the court should be of opinion that the mortgage still continued a charge on the land, then judgment to be entered for the plaintiff ; but if otherwise, then for the defendant.

Mr Ingersoll, attorney general, made two points. 1. That in the case of a common mortgage in this state, for securing the payment of money to an indivdual, the lien of the mortgagee continued, notwithstanding a sale by a sheriff under a subsequent judgment, until he received his full demand. 2. That it was clearly so, in the case of a mortgage under the loan office act of 26th February 1773.

1. The operation of an act of bankruptcy is equal to any execution. But a commission of bankrupt reaches only the equity of redemption. 2 Bl. Com. 487.

In many instances, a mortgage is considered as preferable to a judgment; as if one article to buy an estate, and pays an adequate purchase money, and afterwards the person who agreed to sell, acknowledges a judgment or statute to a third person, who has no notice, this judgment or statute shall not in equity effect the estate; but it is otherwise in the case of a mortgage of the premises for a valuable consideration without notice. A judgment is only a general security, but a mortgage is a specific lien on the lands. 1 P. Wms. 279.

So if a third mortgagee buys in the first mortgage pending a bill brought by the second mortgagee to redeem the first, yet the third mortgagee having obtained the first mortgage, shall thereby squeeze out the second mortgage; *aliter* of a judgment creditor buying in the first mortgage; for he shall not tack the mortgage to his judgment, and thereby gain a preference. 2 P. Wms. 491. Where there is a trust or devise for payment of debts specified in a schedule, a purchaser is bound to see to the application of the purchase money. 1 *Vez.* 173. By application to the proper offices, the different mortgages and judgments on every man's estate, may be accurately ascertained. These being on record, are considered as implied notice to all the world. It is the folly of a purchaser, to omit making due inquiry, when the means of paying his money with safety, lie within his own power; he alone shall suffer for his own laches.

Under the act of 1705, (Prov. Laws, 50, § 4,) the sheriff can convey no other or greater right in lands to his vendee, than the debtor himself had at or before the taking thereof in execution. Now a mortgagor parts with his legal title, and cannot afterwards sell the land thus mortgaged, and defeat his creditor, who relied on this real property as his security. The vendee of the sheriff has the same interest precisely which the debtor had, and no act or matter done or suffered by the latter, can place the former in a better state, than he himself was. But how can a subsequent judgment affect lands already mortgaged? The legal estate is divested from the mortgagor, and there is no interest remaining in him, whereon the judgment can attach.

2. Whatever however may be the law in the case of a common mortgage to an individual, no doubt can arise on a mortgage to the trustees of the loan office, under the act of assembly of February 26th 1773. (Prov. Laws, 478, § 16.) The deeds executed and acknowledged as that act directs, " shall transfer the possession and vest the inheritance of and in the mortgaged premises, to and in the said trustees and their successors, as fully and effectually as deeds of feoffment, with livery and sei-

zin, or deeds enrolled in any of the King's Courts of Westminister may or can do." The plaintiff here then claims the possession of the premises, by the express terms of a positive law, under an anterior conveyance, which vested the complete possession and inheritance in his predecessors, and against which no subsequent deed can possibly prevail.

Mr. Lewis for the defendant, strenuously contended the first point.

Whatever superior right a mortgage may have in England, over a judgment, no such preference is known by the laws of this state. In both countries, a mortgage is looked on as a personal contract, Prec. Cha. 99, 2 Burr. 978; and the mortgagee has no interest beyond his money. The remedy in England is very different from that pointed out by our municipal laws; and the resolutions in the books are wholly founded on the particular constitutions of the courts of law and equity in that kingdom.* In England, a mortgagee obtains redress, by a bill in chancery to foreclose the equity of redemption; in this state, the act of 4 Ann. c. 38, (Prov. Laws, 51,) points out an easy remedy, by *scire facias*. And when any mortgage has been paid off, the mortgagee shall enter satisfaction upon the margin of the record, in the recorder's office, under the penalty of forfeiting a sum not exceeding the mortgage money. Act of 1 Geo. 1, c. 9, §§ 9, 10, Prov. Laws, 79. A first mortgage therefore being discharged, satisfaction must necessarily be entered thereon, and a second mortgagee shall not be squeezed out by a third mortgagee buying in the first mortgage, according to the artificial distinctions in the English books. With us, lands are made *quasi* chattels for payment of debts, and it is no more in the option of the first incumbrancers, by mortgages or judgments, to prevent the sale of the premises under subsequent judgments by the sheriff, than of prior execution creditors preventing the sale of goods by subsequent executions. It is agreed, that in both cases the prior liens shall be first discharged out of the purchase moneys; but it is contended, that the vendees shall hold discharge of all mortgages, judgments and executions, if either real or personal estate is sold, unsubjected to such charges by the sheriff. Pro-

---

* Lord Hardwick, speaking of the creditor's *Tabula in Naufragio*, as it is termed by Lord Hale, observes: Where there is a legal title and equity of one side, chancery never thought fit, that by reason of a prior equity against a man who had a legal title, that man should be hurt; and this by reason of that force, the chancery necessarily and rightly allows to the common law and to legal titles. But if this had happened in any other country, it could never have made a question; for if the law and equity are administered by the same jurisdiction, the rule, *qui prior est tempore, potior est jure*, must hold. Wortley v. Birkhead. 2 *Vez.* 574. 2 *Fonbla.* 309.

perty of both descriptions, is much more productive when disposed of at public sale, free of all charges, and hence it has become usual to sell in that mode. If the sheriff fails in applying the money properly, the remedy of the creditor is transferred to him; and a purchaser would be deemed impertinent indeed, who would offer to interfere in the application of the money, when paid into the sheriff's hands. By the uniform practice of Pennsylvania, difference is effected by sales being had under early or late mortgages or judgments. A *venditioni exponas*, under a late judgment, has always been considered a sufficient authority to the sheriff to sell lands discharged from former incumbrances, even though intermediate judgments could not be paid off on the actual sale.

So little of the nature of real property have mortgages in this state been thought to partake, that even before the act of assembly of 11th February 1789, (2 Dall. St. Laws,) 645, enabling aliens to purchase lands, an alien might legally take a mortgage for securing the payment of a sum of money, according to the most respectable opinions.

It is true, it has been said, (1 Vern. 65, 102.) that a judgment cannot affect lands in mortgage, all the estate at law being in the mortgagee; but if this was strictly true, no second mortgage to another person could be good in law; because there also, the legal estate would be in the first mortgagee. But it will not be seriously urged in Pennsylvania, if lands worth 5000*l*. are mortgaged for 1000*l*, that subsequent judgment creditors, on a deficiency of personal estate, cannot seize and sell the mortgaged premises! It would be strange doctrine to assert, that a mortgagor could sell his lands, and the vendee hold them discharged from judgments subsequent to the mortgage, but prior to his sale! The usage, to go no further, under the former government, as well as since the revolution, has been widely different.

The second point was candidly agreed to be much stronger in the plaintiff's favor, under the terms of the loan office act. But it was urged, that the 9th section of the act. (Prov. Laws, 476) required that the trustees should not loan money on any land security, lying in any other county than where they reside, before the commissioners of the proper county, should have taken a particular oath or affirmation, which shall be deposited with the clerk of the sessions of such county, and certified the value of the lands offered in pledge. This qualification in the present instance not being filed in the proper office, may possibly make a difference in the case of a *bona fide* purchaser, without notice, either express or implied. For

on such oath or affirmation being discovered on record, an alarm would be excited in the minds of persons intending to buy lands in the county, that such lands might be encumbered with loan office mortgages, and they would naturally be led to make further researches.

The court declared that they gave no opinion whatever on the first point, but on the second point thought the law to be beyond question with the plaintiff. The not filing the oath or affirmation of the commissioners of the county, might possibly subject the trustees of the loan office to make up the deficiency, in case the mortgaged premises should not eventually prove to be of sufficient value to pay the mortgage money ; but the want of this ceremony could not possibly invalidate the mortgage.

Judgment for the plaintiff.